Filing Fee Pd

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re an Action Pending in the United States Bankruptcy Court for the Northern District of California )<br>)<br>)<br>)<br>In re H. Keith Henson, )<br>)<br>Debtor. )<br>)<br>)<br>) | Mass. Misc. Bus. Doc. No. 00-113<br><br>N.D. Cal. Case No. : 98-51326ASW-13<br><br>MOTION TO COMPEL ROBERT MINTON TO ANSWER QUESTIONS AND PRODUCE DOCUMENTS; REQUEST FOR CREDITOR'S EXPENSES |

TO DEBTOR H. KEITH HENSON AND NON-PARTY WITNESS ROBERT MINTON AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Bankruptcy Rules 7037, 9014 and 9016, and Rules 37 and 45 of the Federal Rules of Civil Procedure, Creditor Religious Technology Center ("RTC") hereby seeks an order compelling third-party Robert Minton ("Minton") to produce documents that he refused to produce at his Rule 2004 examination and to appear for his continued deposition and respond to questions that he refused to answer, as well as other questions reasonably related to the subject matter of the deposition that counsel did not ask as a result of Minton's refusals to answer. Minton appeared for his deposition for which he was subpoenaed in this district, pursuant to an Order of the Northern District of California, where this chapter 13 case is pending, for his Rule 2004 examination, but refused to answer numerous questions and produced no documents, even though admitting that such documents existed.

RTC also requests that the Court award its fees and costs in bringing this motion and in having its counsel return to Boston to complete Minton's deposition.

1

**DOCKETED**

## RULE 37(a)(2) CERTIFICATION

Counsel certifies that RTC has written to counsel for Mr. Minton on the same day that it is filing this motion in a good faith attempt to resolve the issues addressed herein. This deposition was taken on November 2, 2000, the transcript was not received until several days thereafter, and the discovery cut-off in this case, per the order of the Northern District of California Bankruptcy Court is November 13, 2000. RTC is therefore filing this motion to preserve its rights, but will withdraw the motion should counsel for Mr. Minton indicate his willingness to stipulate to the relief requested herein without intervention by the Court.

DATED: November 13, 2000              Respectfully submitted,


*Earle C. Cooley*
Earle C. Cooley
Cooley, Manion & Jones, P.C.
21 Custom House Street
Boston, Massachusetts 02110
Tel: (617) 737-3100
Fax: (617) 737-3114

Helena K. Kobrin
Florida Bar No. 0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
Tel: 727-443-5620
Fax: 727-443-5640

Attorneys for Plaintiff
RELIGIOUS TECHNOLOGY CENTER

## TABLE OF CONTENTS

I. INTRODUCTION .................................................. 1

II. STATEMENT OF FACTS ........................................... 2

    A. Status of This Case ........................................ 2

    B. The Unanswered Questions and Unproduced Documents ....... 4

III. ARGUMENT ..................................................... 10

    A. The Questions and Documents Sought from Minton Are Relevant ........................................... 10

    B. The Refusal to Respond to Questions and Produce Documents Was Improper ................................. 11

    C. Minton Should Be Ordered to Pay RTC's Expenses ........... 13

IV. CONCLUSION ................................................... 13

# TABLE OF AUTHORITIES

**CASES**                                                               **PAGES**

*Bronston v. United States*,
 409 U.S. 352, 93 S.Ct. 595 (1973) .................................................. 10

*Equal Employment Opportunity Comm'n v. Electro-Term, Inc.*,
 167 F.R.D. 344 (D. Mass. 1996) ..................................................... 10

*Gagne v. Reddy*,
 104 F.R.D. 454 (D. Mass. 1984). ..................................................... 10

*In re Valley Forge Plaza Associates*,
 109 B.R. 669 (Bankr. E.D. Pa.),
 *appeal dism'd*, 116 B.R. 420 (E.D. Pa. 1990) ........................................... 10

*Quantachrome Corp. v. Micromeritics Instr. Corp.*,
 189 F.R.D. 697 (S.D.Fla. 1999). ..................................................... 12

**STATUTES**

11 U.S.C. § 1325(a)(3) ................................................................ 3

11 U.S.C. § 1325(a)(4) ................................................................ 4

11 U.S.C. § 1325(a)(6) ................................................................ 3

11 U.S.C. § 1325(b) ................................................................... 3

Fed.R.Civ. P. 32(d)(3)(A) ............................................................ 12

Fed.R.Civ.P. 30(d)(1) ................................................................ 12

Fed.R.Civ.P. 37(a)(3) ................................................................ 13

Fed.R.Civ.P. 37(a)(4) ................................................................ 13

Fed.R.Civ.P. 45 ..................................................................... 13

Bankruptcy Rule 9014 ............................................................... 12

Bankruptcy Rule 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 10, 11, 12

Bankruptcy Rule 9016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bankruptcy Rule 7026 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bankruptcy Rule 7030 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bankruptcy Rule 7037 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

Creditor RTC, the successful party and now a judgment creditor in an action tried in the Northern District of California, hereby moves to compel the deposition of Sandown, New Hampshire resident Robert Minton. Mr. Minton was subpoenaed in this district, pursuant to a Rule 2004 order by the Bankruptcy Court for the Northern District of California, Honorable Arthur S. Weissbrodt. (Exhibit 5 to Declaration of Helena K. Kobrin and Exhibit A thereto.)

In 1996, Mr. Minton began injecting himself into copyright litigation between RTC and several self-styled Internet "anarchists" who repeatedly and flagrantly violated RTC's copyrights by posting plaintiff's unpublished, copyrighted materials on the Internet and thereafter boasted about their activities. Although all of these persons have been permanently enjoined from such violations of law by several federal courts, Minton literally has provided millions of dollars in support to such copyright infringers and to others involved in litigation against Churches of Scientology. (*E.g.*, Declaration of Helena K. Kobrin, ¶¶ 9-14 and Exhibits thereto.) Minton has also established an anti-Scientology, for-profit corporation, the Lisa McPherson Trust, Inc. ("LMT"), which he funds and through which some of these individuals and others who have acted as paid witnesses in anti-Scientology litigation are also paid extensive sums as employees or in other capacities. (*E.g.*, Kobrin Decl., ¶ 12 and Ex. 11.)

RTC won its copyright infringement suit against the Debtor herein, H. Keith Henson, in May 1998. The United States District Court for the Northern District of California had earlier awarded summary judgment against Henson on liability, and then, on May 12, 1998, a jury adjudicated Henson's infringement to be willful and awarded $75,000 in statutory damages, which is believed to be the largest such award in history for a single infringement.

Henson first filed for bankruptcy the day before the trial was originally set to commence in February 1998. When the automatic stay was lifted, he immediately dismissed his chapter 13 petition, but then obtained an order reinstating the bankruptcy in August 1998. RTC has been attempting to obtain full information concerning Henson's finances ever since, over considerable

obstruction from both Henson and his wife. Henson has testified to payments of money that he received from Robert Minton. However, because Henson's testimony has been contradictory and evasive throughout, and he has provided directly conflicting statements concerning money given to him by Mr. Minton, RTC obtained a Rule 2004 order and subpoenaed Mr. Minton to question him concerning payments of money made to Henson. This motion seeks simply to complete Mr. Minton's examination by having him respond to questions he refused to answer that were directly relevant to the Debtor's finances, to the foundation for his responses concerning payments to the Debtor, and any other questions related thereto, and by having him produce documents that he unilaterally determined he would not produce. RTC also requests that Minton be ordered to pay RTC's costs in bringing this motion.

## II.   STATEMENT OF FACTS

### A.   Status of This Case

This chapter 13 case arises from Keith Henson's wilful infringement of RTC's unpublished, copyrighted work by posting it to the Internet, an action that he admitted he did for fun, amusement and recreation. Having been found liable for his infringement on RTC's summary judgment motion, and facing a trial on the issue of damages in February 1998, Henson filed a chapter 13 petition the day before the trial was to begin. RTC was the only creditor listed by Henson for its unliquidated debt.

The automatic stay was lifted, and his bankruptcy no longer serving its intended purpose, he dismissed this case in March 1998. The copyright case then went to trial in May 1998 before a jury, which returned a $75,000 verdict. In addition, costs were taxed in the amount of $23,501.83. The Court later awarded an additional $75,000 in attorneys' fees. RTC appealed the adequacy of that award, as it was only a small fraction of the actual fees incurred, and in June

2000, the Ninth Circuit vacated and remanded the fees issue for the district court to consider whether additional fees should be awarded based on a lodestar analysis. (Kobrin Decl. ¶¶ 3-4.)

Henson then reinstated this chapter 13 case, which has been active since August 1998. (*Id.*, ¶ 5.) The case is now at the concluding stages of what has been a tortuous effort to obtain discovery concerning the finances of the Debtor and his wife. RTC has filed a Motion to Dismiss, or Alternatively to Convert to Chapter 7 ("Motion to Dismiss"), which was heard by the Northern District Bankruptcy Court on September 13, 2000. At that time, Judge Weissbrodt informed the parties that the Motion to Dismiss is "a very serious motion," and that he intended to hold an evidentiary hearing on the Motion to Dismiss and on RTC's Objections to confirmation of the plan. (*Id.*, Ex.1 at 9-10; Ex. 2.) The underlying grounds for seeking a dismissal or conversion to chapter 7 and for opposing confirmation are: (1) Henson's plan is not proposed in good faith as required by 11 U.S.C. § 1325(a)(3);[1] (2) he will be unable to "make all payments under the plan and to comply with the plan," as required by § 1325(a)(6); (3) the value of the property to be distributed is far less than RTC's claim, and Henson has no projected disposable income to devote to the plan, as required by § 1325(b); and (4) "the value, as of the effective date of the plan, of property to be distributed on account of each allowed unsecured claim" is less than what would be paid if the debtor's estate were liquidated on that date, as set

---

[1] RTC has argued numerous indicia of Henson's bad faith. Germane to the need for Minton's deposition are Henson's: (1) presentation of inaccurate information and omission of facts in both his original and amended schedules, including income received from Minton, and omission of this income from his tax returns; (2) proposing minimal payments in spite of a strong ability to earn far more income, while also not telling the court of all of his income; (3) engaging in egregious discovery obstruction, requiring five motions and consequent orders over a two-year period in order for RTC to complete discovery; (4) omitting debts from his schedules and not addressing them in his plan; and (5) destroying evidence of income and expenses and claiming severe memory lapses with respect to financial matters. (Kobrin Decl., Ex. 2, at 4-14.)

3

forth in § 1325(a)(4). (Ex. 2.)

RTC is actively working to complete discovery. One of the few remaining "loose ends" is the completion of Minton's examination. Debtor Henson has testified to funds provided to him or for his benefit by Minton (Kobrin Decl., ¶ 6 and Ex. 3 at 192-195). He testified that Minton made two such payments, totaling $25,000, to his former attorneys in 1998, and that he had not declared that amount on his tax return. (*Id.* at 195.) In an errata to his deposition, Henson attempted to backpedal from this statement, claiming that he had forgotten the money given him by Minton was a "loan," and that was why he did not declare it for tax purposes. (Kobrin Decl., Ex. 4.) RTC sought Minton's deposition to clear up what funds he has actually given to Henson, either directly or indirectly, and in what form.

**B.     The Unanswered Questions and Unproduced Documents**

The questions Minton refused to answer and the documents he refused to produce are all directly related to Henson's finances:

Questions

- Q. . . . You do have gift tax returns that reflect payments to Keith Henson?
  MS. RICCI: Objection.
  MS. KOBRIN: I'm trying to find out if a document exists or it doesn't exist.
  A. If I do, I'm not providing it.
  Q. Well, I just need to know whether you do or not. Because if any motion to compel is going to be brought, we need to know whether a document exists. If it doesn't exist --
  A. Anything with regards to tax returns I'm not answering, nor providing any documentation.

(Ex. 6, at 7:15-8:3.)

- Q. Is Mr. Henson's name reflected in any tax return that you have ever filed?
  MS. RICCI: Objection.
  A. I refuse to answer.
  Q. What is the basis of the refusal?

4

MS. RICCI: Outside of the scope of this deposition, intended to harass the witness.
MS. KOBRIN: And you understand, Counsel, that the question is limited to Mr. Henson, who is the debtor in this bankruptcy case, in which I'm simply attempting to determine payments of money to Mr. Henson.

* * *

MS. RICCI: . . . I do.

(*Id.* at 8:5-9:1.)

- Q. Well, so then I assume that you have tax returns that reflect payments to Mr. Henson or you would simply say you don't have any, is that correct?
  MS. RICCI: Objection.

(*Id.* at 9:2-6.)

- A. To simplify the matter for you, I have paid money to Mr. Henson before your document requests asked for any information concerning that matter.
  Q. When was that?
  A. That's outside of the scope of the deposition.

(*Id.* at 16:1-6.)

- Q. Mr. Minton, are you a director of a company called the Lisa McPherson Trust?
  MS. RICCI: Objection.
  MS. KOBRIN: I'm asking this purely as a foundational question related to Mr. Henson.
  MS. RICCI: Well, we'll take it one question at a time.
  MS. KOBRIN: Well, I can't get to the next questions unless I get an answer to this one.
  Q. So you can answer the question.
  A. I'm not answering the question.

(*Id.* at 26:24-27:12.)

- Q. And you're involved [in the Lisa McPherson Trust] in what capacity?
  MS. RICCI: Objection.

(*Id.* at 28:13-14.)

- Q. If Mr. Henson fails to pay money to you, is it correct that you will not have any basis to go into court and sue him for the money?
  MS. RICCI: Objection.
  Q. You can answer the question.

5

> A. I refuse to answer.
> MS. KOBRIN: I don't understand what that refusal is based on. I don't understand what the objection is based on.
> MS. RICCI: You're asking him to draw a legal conclusion. He's not competent. Objection as to competency of the witness to answer that question.

(*Id.* at 42:2-14.)

> • Q. Did anyone give you money and say, "Please use this money to make payments for people in copyright litigation with the Church of Scientology"?
> A. That's outside of the scope of the deposition.
> Q. Well, Mr. Henson is in that category. That's why I'm asking.
> A. I've already answered all the questions about payments to Mr. Henson. So it's outside of the scope of the deposition.
> Q. It's actually a different question, and it's in the scope of the deposition.
> A. Well, I'm not answering it.
> Q. Did anyone ever give you money and say that it was to be paid to any kind of group of people of which Mr. Henson was a member, use it to pay to such people?
> MS. RICCI: Objection. That's vague.
> A. I refuse to answer.
> Q. Has anyone given you money and said it was to be used to pay to people who were engaged in anti-Scientology activities?
> MS. RICCI: Objection.
> A. I refuse to answer.

(*Id.* at 46:16-47:15.)

Documents

1. Any and all documents reflecting payments of money that you have made to H. Keith Henson or any member of his family, either from your own funds or funds belonging to others, from February 1998 to present, whether directly or indirectly, whether gift, loan or for services provided.

2. All documents, including but not limited to W-2 forms, 1099 forms, canceled checks and wire transfer records, reflecting each payment made by you to H. Keith Henson or any member of his family.

3. Any and all documents reflecting payments of money that you have paid to any third party on behalf of H. Keith Henson or any member of his family from February 1998 to present, whether directly or indirectly, whether gift, loan or for services provided.

6

     5.    Copies of all gift tax returns reflecting payments made to H. Keith Henson or any member of his family.

(Ex. A to Subpoena, Ex. 5 hereto.)

Minton's testimony made clear that he does have documents responsive to these requests, but, without requesting any protective order, he has made the unilateral decision that he will refuse to produce them.

As to one category of documents, Minton admitted, when asked, that he had responsive documents, but was refusing to produce them:

- Q.    Fifth is "Copies of all gift tax returns reflecting payments made to H. Keith Henson or any member of his family." Do you have any documents in that category?

    A.    No -- I do have such documents in my possession, but they're not for -- you know, I'm not going to provide them.

(*Id.*, Ex.6 at 7:7-13.)

With respect to the rest of the documents, however, Minton testified that there were no documents:

- Q.    . . . "Any and all documents reflecting payments of money that you have made to H. Keith Henson or any member of his family, either from your own funds or funds belonging to others, from February 1998 to present, whether directly or indirectly, whether gift, loan or for services provided." Now, do you have any documents in any of those categories?
    A.    No, but I have some information concerning some payments for you.
    Q.    . . . The second one is, "All documents, including but not limited to W-2 forms, 1099 forms, canceled checks and wire transfer records, reflecting each payment made by you to H. Keith Henson or any member of his family." Do you have anything in that category?
    A.    No.
    Q.    The third is, "Any and all documents reflecting payments of money that you have paid to any third party on behalf of H. Keith Henson or any member of his family from February 1998 to present, whether directly or indirectly, whether gift, loan or for services provided." Do you have any of those documents?

7

    A.    No.

(*Id.* at 5:17-6:3; 6:5-21.)

Later questioning, however, revealed that responsive documents do exist, and Minton's testimony was false:

- Q. Were the other two amounts that you gave to Musick Peeler, were they also reflected in the checkbook?
  A. Yes.
  Q. So then you do have documents that are responsive to the subpoena?
  A. No. I've already many times made it clear I'm not giving the Church of Scientology any documents or checks on my personal accounts.
  Q. All right. I'm not trying to establish what you want or do not want to give me. I'm asking you whether you have actual documents.
  A. I refuse to answer.
  Q. In preparing for the deposition, did you look at any documents to determine whether you paid amounts of money to Mr. Henson?
  A. I did.
  Q. And those were in your checkbook?
  A. Correct.
  Q. And is this --
  A. Electronic.
  Q. -- an electronic checkbook? On a program like Quicken or something like that?
  A. Something like that.

(*Id.* at 24:17-25:16.)

- Q. Do your records reflect any notation as to what the purpose of the $1,000 was?
  A. Paperwork is all I put down.

(*Id.* at 26:2-4.)

- Q. When you paid the two payments to Musick Peeler on Mr. Henson's behalf, did he then receive any tax documents from you such as a 1099 or any other sort of document related to those payments?
  A. I refuse to answer the question.

(*Id.* at 51:8-13.)

- Q. Do you have canceled checks for the three amounts that you paid either to Mr. Henson or that that were paid on his behalf that came back to you?

8

A.  I don't know.
Q.  Do you receive checks back from your bank?
MS. RICCI: Objection.
A.  I'm not going to answer any questions about my relationship with my bank.
Q.  There are some kinds of accounts where people don't get checks back. I'm just trying to determine --
A.  I'm not going to answer any questions about my personal bank.
Q.  I'm trying to determine if there were existing documents that came back to you on Mr. Henson.
A.  I'm not going to answer any questions concerning the relationship between me and my bank.

(*Id.* at 52:18-53:12.)

In other instances, while Minton did not refuse to answer, his testimony can only be characterized as evasive. For example, Minton testified that he knew of no payments from LMT to Henson. (*Id.* at 28:19-21.) However, he consistently refused to answer direct questions concerning his capacity with LMT, as above, and obfuscated in response to all attempts to obtain this information:

- Q.  Would LMT inform you about payments to Mr. Henson because you have some official capacity with LMT?
  MS. RICCI: Objection.
  A.  It could be. They don't inform me about every payment they make. In fact, very few of them.
  Q.  Is there some official capacity in which you receive information about whether they're paying Mr. Henson or other people?
  A.  Just to keep me informed.
  Q.  Do they inform you because you are a director of LMT?
  MS. RICCI: Objection.
  A.  It could be for that reason.
  Q.  Could it be for another reason?
  MS. RICCI: Objection.
  A.  It might.
  Q.  What other reason could there be?
  A.  I don't know.

(*Id.* at 50:2-20.)

9

## III. ARGUMENT

### A. The Questions and Documents Sought from Minton Are Relevant

Rule 2004 discovery is "'a searching inquiry into the condition of the estate of the bankrupt, to assist in discovering and collecting the assets, and to develop facts and circumstances which bear upon the question of discharge.'" *Bronston v. United States*, 409 U.S. 352, 357, 93 S.Ct. 595, 599 (1973) (citation omitted). The scope of examination under Rule 2004 was described in *In re Valley Forge Plaza Associates,* 109 B.R. 669, 674 (Bankr. E.D. Pa.), *appeal dism'd,* 116 B.R. 420 (E.D. Pa. 1990):

> R2004 permits a party invoking it to undertake a broad inquiry of the examiner, in the nature of a "fishing expedition." . . . The scope of a R2004 examination is even broader than that of discovery permitted under the F.R.Civ.P., which themselves contemplate broad, easy access to discovery. . . . the breadth and scope of a R2004 examination derives from the particular purpose for which R2004 and its predecessor provisions under the Bankruptcy Act were promulgated. That is to allow a trustee, or others interested in accomplishing the same ends, to discover and investigate how to bring to light possession of assets of the debtor which might be intentionally concealed or overlooked in ignorance or haste.

(Citations omitted.)

Furthermore, "'relevant information includes any matter that is or may become an issue in the litigation.'" *Equal Employment Opportunity Comm'n v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996), citing *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984).

It has been uniformly held that:

> As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action.

*Equal Employment Opportunity Comm'n*, 167 F.R.D. at 346.

RTC seeks information relating to the finances of the debtor, and particularly including

10

the amount of money he has received both directly and indirectly from Minton. Henson himself has admitted to receiving at least $26,000 from Minton (Ex. 3, at 192-194), and he has equivocated concerning whether Minton has given him other amounts. (Ex. 15 at 107-108; Ex. 16 at 452-453.) Henson has testified to receiving thousands of dollars anonymously and does not know if any of those amounts came from Minton. (Ex. 19, at 447-448, 476-477.) Minton's testimony on payments to Henson was also equivocal as he claimed not to know the first time he paid money to Henson, the amount or even the magnitude of any payments prior to February 1998. (Ex. 17, at 17:7-17.) Furthermore, he attempted to place an artificial limit on the subject matter of the deposition as only payments to Henson after that date (Ex. 6, at 13:24-14:19, 15:4-7), even though the document describing the scope of the deposition, as discussed on the record, clearly makes no such limitation. (Ex. 6, at 10:18-12:21; Ex. 17, Application, Ex. A thereto.)

Henson is also on the advisory board of the Minton-formed LMT (Ex. 6, at 27-28), which pays substantial sums of money to other individuals involved in litigation with RTC. (Ex. 11.) Every document requested of Minton, and every question asked of him relates directly to this funding of Henson or seeks foundational information as to Minton's capacity to provide other such testimony. As this case is pending in the Northern District of California, Minton will be "unavailable" for trial, and this foundational information is clearly needed in order to use his transcript for trial purposes. All of the refused testimony and all of the documents requested are clearly relevant, or at least likely to lead to admissible evidence.

**B. The Refusal to Respond to Questions and Produce Documents Was Improper**

The subpoena to Minton issued pursuant to a Rule 2004 order issued by Judge Weissbrodt. (Ex. 5 and Ex. A thereto.) In addition, as the Motion to Dismiss is a contested

matter now pending, Rule 9014 also applies to discovery being conducted, and pursuant to that Rule, also Bankruptcy Rules 7026, 7030 and 7037. Accordingly, the Federal Rules of Civil Procedure are applicable to this subpoena.

Minton made no objections to complying with the subpoena prior to the commencement of the Rule 2004 examination. In fact, his attorney represented that he was planning to comply with the subpoena, including the document request. (Kobrin Decl., ¶5.) Nevertheless, he appeared and refused to produce documents and also refused to answer numerous questions that either directly addressed payments to the Debtor or addressed Minton's capacity to respond to the questions being asked.

It is hornbook law that it is improper for a deposition witness to refuse to answer questions on grounds other than privilege (*e.g.*, relevance). Fed.R.Civ.P. 30(d)(1) defines the scope of proper objections during an examination:

> Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative and non-suggestive manner. A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3).
>
> Based upon this rule, "it is improper to instruct a witness not to answer a question based on form and relevancy objections. It is arguable whether objections based on relevancy should even be made during the deposition. See Fed.R.Civ.P. 32(d)(2)(A)."[2]

*Quantachrome Corp. v. Micromeritics Instr. Corp.*, 189 F.R.D. 697, 700 (S.D.Fla. 1999).

Here, Minton took it upon himself not to answer. While his attorney did not instruct him not to do so, on several occasions she attempted to justify his refusals with her objections.

---

[2] This reference is to what is now Rule 32(d)(3)(A), which preserves objections based on relevancy if not made at a deposition.

Minton also evaded answering questions, which is treated as a failure to answer. Fed.R.Civ.P. 37(a)(3).

### C. Minton Should Be Ordered to Pay RTC's Expenses

Fed.R.Civ.P. 37(a)(4) provides that when a motion to compel discovery is granted,

> the court **shall**, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Furthermore, Fed.R.Civ.P. 45, made applicable to bankruptcy cases by Bankr.R. 9016, states that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued."

Minton's counsel made no objection to the deposition and represented that he would comply with the subpoena. While Minton did appear and answer some questions, he produced no documents, even ones he admittedly had, he gave the false answer concerning several categories that he had no documents, and he refused to answer numerous proper and relevant questions.

Minton's actions are not "substantially justified" and an award of expenses is in no way unjust. RTC should therefore be awarded its expenses in having to bring this motion.

## IV. CONCLUSION

For the foregoing reasons, Minton should be ordered to appear for the completion of his deposition, to answer all questions he refused to answer and any related and follow-up questions,

13

and RTC should be awarded its expenses against Minton for having to bring this motion and to have its counsel travel to Boston for a second time and incur costs of a second examination because of Minton's meritless objections.

DATED: November 13, 2000

Respectfully submitted,

Earle C. Cooley
Cooley, Manion & Jones, P.C.
21 Custom House Street
Boston, Massachusetts 02110
Tel: (617) 737-3100
Fax: (617) 737-3114

Helena K. Kobrin
Florida Bar No. 0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
Tel: 727-443-5620
Fax: 727-443-5640

Attorneys for Plaintiff
RELIGIOUS TECHNOLOGY CENTER

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **MOTION TO COMPEL ROBERT MINTON TO ANSWER QUESTIONS AND PRODUCE DOCUMENTS; REQUEST FOR CREDITOR'S EXPENSES** and **DECLARATION OF HELENA K. KOBRIN IN SUPPORT OF MOTION TO COMPEL ROBERT MINTON TO ANSWER QUESTIONS AND PRODUCE DOCUMENTS; REQUEST FOR CREDITOR'S EXPENSES** has been furnished on November 13, 2000 to the persons listed on the below service list, as indicated.

_/s/ Helena K. Kobrin_
Attorney

## SERVICE LIST

Stephen A. Jonas          **Via Hand Delivery**
Hale & Dorr
60 State Street
Boston, MA  02109

Stanley A. Zlotoff        **Via Federal Express**
Bluer & Zlotoff
300 South First Street, Suite 215
San Jose, CA. 95113

Devin Derham-Burk         **Via U.S. Mail**
Chapter 13 Trustee
2105 South Bascom Avenue, Suite 280
Campbell, CA 95008

Robert Gebhard, Esq.      **Via U.S. Mail**
Assistant U.S. Trustee
U.S. Trustee's Office
280 South First Street, Ste. 268
San Jose, CA 95113